IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DONALD L. AND
BRENDA J. PELLEGRINI,
ANNE G. EBEL,

    Plaintiffs,

v.

CASE NO.: 1:14-cv-00180-VJW
Hon. Victor J. Wolski

UNITED STATES OF AMERICA,

    Defendant.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS IN PART, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND FOR MORE DEFINITE STATEMENT

COME NOW the Plaintiffs, DONALD L. and BRENDA PELLEGRINI, and ANNE G. EBEL (collectively the "Plaintiffs") and respond to the aforementioned motions as follows:

### STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By comparison, a motion for summary judgment should only be granted if the movant shows that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. *Anderson v. Libby Lobby, Inc.* 477 U.S. 242, 248 (1986).

### SUMMARY OF THE ARGUMENT

The Plaintiffs assert that their complaint does state sufficient factual matter to state a claim for relief and that the complaint should not be dismissed. The Plaintiffs further assert that the Defendant's motion for summary judgment fails to establish the *prima facie* elements which

1

the Government needs to establish to entitle it to summary judgment and that therefore the motion for summary judgment should be denied.

First, while the Government asserts that the docks sat on pilings located within the navigable waters of the United States as of 2008, the Plaintiffs assert that the Government has applied an inappropriate standard. The Plaintiffs assert that the Government's navigational servitude only applies to the portions of the St. Johns River which were navigable[1] when the State of Florida became a state in 1845. Because the Government has failed to establish that the destroyed docks were within the navigational servitude that existed when Florida became a state on March 3, 1845, summary judgment is inappropriate.

Navigational charts from 1879 (See USGS Navigational Chart 1879 Edition, St. Johns Bluff Reach) show that the North side of the St. Johns River where the Plaintiffs homes are located was non-navigable in 1879, prior to the commencement of dredging of the channel in the 1890s. A light was established labeled the "White Beacon No. 2" directing ships to avoid the North side of St. Johns Bluff Reach because the shallow depth rendered it non-navigable, and vessels using the area where the Plaintiff's homes are now located would run aground. The navigational channel ran along the South bank of the River at St. Johns Bluff. For this reason, the Plaintiffs assert that the area where the Plaintiffs' docks and boathouses were located was not subject to a navigational servitude.

---

[1] While the term "navigable" has numerous definitions depending upon the context in which the term is used, for the purpose of this motion the term "navigable" means "capable of being used as a highway of interstate commerce." Under this definition, wetlands and marshlands are not "navigable." See *Alameda Gateway, Ltd. v. United States*, 45 Fed. Cl. 757 (Fed. Cl. 1999).



Second, the Government fails to address the fact that the Plaintiffs obtained a protectable property interest in the submerged lands by virtue of the permits they were granted by the Army Corps of Engineers and the Florida Department of Environmental Protection. In detrimental reliance upon those permits, the Plaintiff expended funds to build the docks and boathouses on

3

the submerged lands. Whether the rights created are called easements by prescription, or common law easements, or simply "expectancies," as they were termed by the Supreme Court in *Kaiser Aetna*, the property interests are protected by the 5th Amendment.

Third, the Government's motion fails to address the fact that in addition to the loss of the docks, the Plaintiffs lost their boats and associated equipment, and were subjected to clean up costs, and the cost of stabilizing the upland portions of their property to prevent further destruction.[2] Those claims are not properly subject to the Government's summary judgment motion because they are consequential to the taking of the underlying property.

## DISPUTED ISSUES OF MATERIAL FACT

The Plaintiffs assert that there are disputed issues of material fact which preclude the entry of summary judgment in this matter as follows:

1. The Government's motion fails to demonstrate that the properties on which the docks and boathouses sat, adjacent to 7048 and 7036 Ramoth Drive on Little Marsh Island were subject to a navigational servitude. The evidence shows that they were not part of the navigable waters of the United States at the time that the State of Florida became a state on March 3, 1845. Unless they were, there is no navigational servitude.[3] It was only the dredging which occurred

---

[2] The Pellegrini claim illustrates the damages involved: Nordin boat: $13,000; Stratus boat: $2,000; Equipment on both boats: $3,000; 15 HP Motor on Nordin: $2,450; Clean up of destruction: $72,000 ; Estimate to rebuild dock: $56,210. The Pellegrinis continue to lose upland to the encroachment of the River.

[3] In *Kaiser Aetna*, *supra*, Justice Blackman stated the position that 1) all waters subject to the ebb and flow of the tide were navigable waters which were subject to a navigational servitude and that 2) the term "navigational servitude of the United States" was coextensive with the term "navigable waters of the United States." The majority of the Court rejected both of those positions.

from the 1890s onward that changed the area and brought the navigational channel closer to those properties.

2. The Plaintiff's argument is based upon the substantial change in topography which has occurred to Little Marsh Island since the 1890s. Government's own motion establishes that:

> ...by 1946 the federal government had dredged a ship channel from Jacksonville to the river's mouth providing a continuous depth of 30 feet at mean low water....However, due to navigational difficulties created by the larger vessels being used after World War II, commercial and shipping interests requested that the ship channel be straightened from Dames Point to St. Johns Bluff...By 1951, construction of the Dames Point and Fulton-St. Johns Bluff cutoff and deepening of the shipping channel had been completed. (Defendant's Motion to Dismiss, et al. Doc. No. 6 at pp. 5-6.)

The properties in question here are located in the St. Johns Bluff Reach immediately to the east of Blount Island, a man-made island created between 1946 and 1951 by the creation of the Dames Point and Fulton-St. Johns Bluff Cut. The Plaintiffs assert that the facts show that the property on which the docks were located were not within the "navigational servitude of the United States" because they were non-navigable at the time that Florida became a state.

3. Since the topography of the entire area in the St. Johns Bluff Reach and around Blount Island has changed since Florida became a state, the assertion that the property on which the docks and boathouses were built was part of the "navigable waters of the United States" in 2008 does not establish that the property lies within the navigational servitude. In this case, the destruction of the Plaintiffs docks and boats was not necessary to preserve the use of the navigational channel. The Army Corps chose to pursue the deepening of the channel without taking steps to preserve the docks located adjacent thereto. It made a choice to "take" the

Plaintiffs' property through destruction, rather than expend public funds to accomplished the dredging project while preserving the adjacent property of landowners. That was a "taking" for a public purpose, for which compensation is due under the Takings Clause.



4. As the Government noted in its motion, the Plaintiffs received permits from the Army Corps of Engineers and the State of Florida's Department of Environmental Protection to construct their docks and boathouses. (See Defendant's Motion to Dismiss, et al. Doc. No. 6 at p.

8.) The permits created a property interest which cannot be taken by the Army Corps of Engineers without just compensation. As the Supreme Court stated in *Kaiser*, the consent of the Army Corps of Engineers to the improvement of property "can lead to the fruition of a number of expectancies embodied in the concept of "property" -- expectancies that, if sufficiently important, the Government must condemn and pay for before it takes over the management of the landowner's property." *Kaiser Aetna v United States*, 444 U.S. 164, 179 (1979).

In *Kaiser*, the Court opined that "the imposition of the navigational servitude in this context will result in an actual physical invasion of [a] privately owned marina" which may create a property interest sufficient to require compensation. *Id* at 180. The determination of whether the detrimental reliance by the property owner was justified, and whether the expectancies are sufficiently great to warrant compensation, is determined based upon the facts of the case.

In this case, the Army Corps of Engineers has created the expectation among not just the Plaintiffs, but also among thousands of other property owners along the St. Johns River, that they can build docks and boathouses, with appropriate permits, into the St. Johns River, without fear that the Army Corps of Engineers will knock them down without good reason. All of these property owners have an easement[4] created by the permits which create a property right in the continued existence of the docks and boathouses.

5.     Under the Submerged Lands Act, 43 U.S.C. § 1301 *et.seq*. the river bed on which boathouses and docks were built were owned by the State of Florida, not by the United States.

---

[4] Even if the Government physically invades only an easement in property, it must nonetheless pay just compensation. See *United States v. Causby*, 328 U.S. 256, 265 (1946); *Portsmouth Co. v. United States*, 260 U.S. 327 (1922).

The subsoil and substrate which the United States caused to slide into the center of the channel belonged to the State of Florida, and provided lateral and subjacent support for the structures owned by the Plaintiffs. The State of Florida had granted the Plaintiffs the right to use the riverbed, and the right to expect the continued lateral and subjacent support for the docks and boathouses. While the meaning of the term "property" as used in the Fifth Amendment is a federal question, "it will normally obtain its content by reference to local law." *United States v. Powelson*, 319 U.S. 266, 275 (1943). Hence whether the Plaintiffs had a property interest in the lateral and subjacent support of the river bottom is a question of state law. Under Florida law, where removal of lateral and subjacent support results in a collapse of property in its natural state, the adjoining landowner is entitled to compensation. *State Road Department of Florida v. Tharp*, 1 So.2d 868 (Fla. 1st DCA 1941).

## **MEMORANDUM OF LAW**

As the Supreme Court stated in *Kaiser Aetna, et. al. v. United States*, 444 U.S. 164 (1979), "this Court has never held that the navigational servitude creates a blanket exception to the Takings Clause whenever Congress exercises its Commerce Clause authority to promote navigation." In that case, Kaiser Aetna created a private marina on waters which were only two feet deep, prior to improvement, but which were adjacent to navigable waters. The Government sought to open the marina to the public, without compensating Kaiser Aetna for its property, and to require permitting of all future improvements to the marina. The Supreme Court said that the actions of the Army Corps of Engineers amounted to a taking, which, while permissible under the Commerce Clause, required the payment of just compensation under the Takings Clause.

The "navigable waters" of the United States are those waters which "form in their

ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce [was] or, [might have been] carried on with other States or foreign countries in the customary modes in which commerce is conducted by water." *The Daniel Ball*, 77 U.S. 557, 563 (1871). Not all of the navigable waters of the United States which exist in 2008, the date when the Plaintiffs' docks were destroyed, are within the navigational servitude of the United States. The Government's navigational servitude is fixed in time to the date when a state became part of the United States. In determining whether property lies within the navigational servitude, the court looks to the natural condition of the property when the U.S. first acquired sovereignty over the property. In this case, that date is March 3, 1845. *Alameda Gateway Ltd. v. United States*, 45 Fed. Cl. 757 (Fed. Cl. 1999). For that reason, property which was upland or marshland in 1845[5] does not fall within the navigational servitude. The Government has failed to show that it has a navigational servitude which includes the property on which the Plaintiffs' docks and boathouses sat.

## RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT

The Plaintiffs remain ready to provide whatever dates the Defendant thinks it needs to prepare its defense. However, the very fact that it felt it had enough information to attach hundreds of pages of Exhibits to the motion, and seeks summary judgment, indicates that it already has sufficient information which would enable it to file an answer to the complaint.

---

[5] For example, in *Alameda Gateway*, the Government was required to pay compensation for pilings which were located on property which was marshland, and hence non-navigable in 1850 when California became a state. The Court found that "the portion of the property which was navigable at the time of California statehood...remains subject to the federal navigational servitude and is excluded from plaintiff's compensable property interest in the Alameda site." However, the portion of the property which was outside the navigational servitude was compensable under the 5th Amendment Takings Clause.

Hence the Motion for More Definite Statement should be denied.

Dated this 15th day of August, 2014.

                                              Respectfully submitted,

                                              SULLIVAN & COMPANY

                                              /s/ GJ Sullivan, Jr.
                                              G.J. Rod Sullivan, Jr., Esquire
                                              Florida Bar No.: 356794
                                              8777 San Jose Blvd., Suite 803
                                              Jacksonville, Florida 32217
                                              rsullivan@fcsl.edu
                                              (904) 355-6000 (office)
                                              (904)737-0920 (facsimile)

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 15, 2014 I electronically served a true and correct copy of the foregoing by using the ECF system for filing and transmittal of a Notice of Electronic filing to counsel of record.

                                              /s/ GJ Sullivan, Jr.